COREY v. SHEEHAN.

MINES AND MINERALS—OIL AND GAS LEASES—AVOIDANCE—RE-
NEWALS.

In suit by lessees under an oil and gas lease to set aside a sub-
sequently executed lease given by lessors in renewal of a prior
lease, plaintiffs' lease *held*, effective, where it provided for
avoidance only in case prior lessee commenced a well within
term of his lease and such prior lease made no provision for
renewal and no well was commenced by prior lessee within term
of his original lease.

Appeal from Ogemaw; Shaffer (John C.), J.
Submitted June 9, 1937. (Docket No. 52, Calendar
No. 39,502.) Decided September 1, 1937.

Bill by George W. Corey and Harry E. Eymer
against Edward Sheehan and wife and M. C. Hagan
to set aside an oil lease and for other relief. Cross-
bill by defendants Sheehan against plaintiffs to set
aside a lease and for other relief. Decree for plain-
tiffs. Defendants appeal. Affirmed.

*Melvin E. Orr,* for plaintiffs.

*Earl R. Chapin* and *Harry C. Kinne,* for defend-
ants.

BUTZEL, J. Defendants and cross-plaintiffs Shee-
han, owners of 120 acres of land in Ogemaw county,
Michigan, had given to M. C. Hagan, also a defend-
ant and cross-plaintiff, an oil lease for a term of

three years, beginning October 2, 1933. It provided
for the drilling of a well within a year and for
royalties from gas and oil if produced, and the pay-
ment of $.50 per acre each year payable quarterly
in advance until the well was drilled or lease sur-
rendered prior to the end of the term. The lease
contained no renewal clause.

The Sheehans were dissatisfied with a rental of
$.50 an acre when the current rate was higher
and frequently discussed the matter with plaintiff
George W. Corey, the owner of land adjoining that
of the Sheehans. On August 25, 1936, less than 40
days prior to the expiration of the Hagan lease, the
Sheehans gave an oil lease on the same land to Corey
and Eymer, plaintiffs and cross-defendants, for a
term of five years, and in the event that drilling was
not begun by October 3, 1936, the day after the ex-
piration of the Hagan lease, the lessees agreed to
pay to lessors $30 in advance every three months
until the well was "commenced," otherwise forfeit
their rights under the lease. We need not discuss
other terms which in some respects may have been
more advantageous to lessees than those in the pre-
vious Hagan lease. The final clause of the lease,
evidently typewritten, as the court found, stated:

"It is provided and understood that said lands
have been heretofore leased to M. C. Hagan, which
term expires October 2, 1936, and this lease is sub-
ject thereto. In event said M. C. Hagan or his as-
signs commence a well on said lands within the term
therein provided, then this lease shall be null and
void."

The Sheehans drove to Prescott, Michigan, to ex-
ecute the lease and later the same day re-executed
it so as to make it comply with the recording laws.
It was recorded at once. Corey testified that he

read the typewritten portion of the lease to the Sheehans before it was signed by them.

On September 28, 1936, Hagan, who claims to have had a promise from the Sheehans that they would renew his lease on request, secured from them a new lease for a term of five years and providing for the payment of $1 per acre each year, payable quarterly in advance as a rental and for the privilege of deferring a commencement of a well for the term of the lease. The new lease stated it was a renewal of the first lease of October 2, 1933. Hagan paid the Sheehans $100 for the new lease.

Plaintiff filed the bill asking that the last Hagan lease be set aside and discharged from the record, while cross-plaintiffs ask similar relief as to the Corey and Eymer lease. The trial judge upheld plaintiffs' claims and rendered a decree upholding their lease and setting aside that of defendants. Only questions of fact are presented on appeal. Defendants presented strong testimony tending to show that the lease to plaintiffs was only delivered conditionally and was not to become effective if Hagan should renew his prior lease before its expiration date. It was shown that the sum of $50 was paid to Sheehans' son for using his influence with his parents to give plaintiffs the lease. On the other hand, it would seem that when Hagan offered the Sheehans $100 in hand for a renewal they could not withstand the pressure. Sheehan testified that at the time he knew he had leased to Corey and Eymer but he wanted the money so badly. Mrs. Sheehan also testified on cross-examination that she did not tell Corey that she had an agreement to renew the Hagan lease, but that the Corey and Eymer lease was not to become effective if .Hagan did renew.

Corey denied that the delivery of the lease was conditional. It would not benefit further to detail conflicting testimony. We are impressed not only by the opinion of the trial judge who saw the witnesses, but also by the fact that the Corey and Eymer lease referred to in the second Hagan lease made due provision in case a well was commenced, but made no mention whatsoever for the contingency of a renewal by Hagan.

The decree of the trial court is affirmed, with costs to plaintiffs and cross-defendants.

FEAD, C. J., and NORTH, WIEST, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.